UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CHUBB & SON INC., *et al.*,

                        Plaintiffs,

-against-

MICHAEL J. KELLEHER, *et al.*,

                        Defendants.
-----------------------------------------------------------X
CHUBB & SON INC., *et al.*,

                        Plaintiffs,

-against-

JAMES KELLEHER, *et al.*,

                        Defendants.
-----------------------------------------------------------X

REPORT AND RECOMMENDATION

92 CV 4484 (CBA) (RML)

95 CV 0951 (CBA) (RML)

LEVY, United States Magistrate Judge:

      By order dated November 27, 2002, the Honorable Carol Bagley Amon, United States District Judge, granted plaintiffs' motion for a default judgment against defendant Stephen Horowitz ("defendant" or "Horowitz"), and by order dated May 27, 2005, Judge Amon referred this matter to me for an inquest on damages. By order dated July 20, 2005, I instructed plaintiffs to serve and file a detailed written submission, with supporting documentation, to substantiate their claim for damages with respect to Horowitz on or before September 9, 2005. I further directed Horowitz to serve and file his opposition, if any, on or before October 7, 2005. Plaintiffs filed their submission in a timely manner, but Horowitz failed to respond. At the court's request, plaintiffs supplemented their submission with revised calculations and additional documentation. (See Letter of Howard S. Veisz, Esq., dated Mar. 9, 2006 ("Veisz Ltr."), and

exhibits, filed under seal pursuant to a protective order.) Based on plaintiffs' unopposed submissions, I respectfully recommend that judgment be entered against Horowitz in the amount of $4,678,641.55, plus per diem interest of $200.80 from March 3, 2006 to the date of the entry of judgment.[1]

## BACKGROUND AND FACTS

It is settled law that a defaulting defendant is deemed to have admitted all of the well-pleaded allegations in the complaint, except those pertaining to the amount of damages. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 853 (2d Cir. 1995); Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The allegations in plaintiff's Second Amended Complaint are as follows:

Plaintiffs Chubb & Son Inc., Federal Insurance Company, Vigilant Insurance Company, Sea Insurance Company of America and Great Northern Insurance Company

---

[1] The court will not conduct a separate hearing to determine plaintiffs' damages with respect to claims against Horowitz. The Second Circuit has made clear that a hearing to determine the amount of damages with regard to a default judgment is not required "as long as [the court is] ensured that there [is] a basis for the damages specified in the default judgment." Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989) (whether a hearing is necessary is in "the discretion of the district court"); see also Fed.R.Civ.P. 55(b)(2) ("the court may conduct such hearings or order such references as it deems necessary and proper" in order to determine the amount of damages); Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (Rule 55(b)(2) "allows but does not require the district judge to conduct a hearing"). A court may rely instead on "detailed affidavits or documentary evidence" in addition to the judge's personal knowledge of the record, acquired over the course of his or her involvement with the litigation. Fustok, 873 F.2d at 40; see also Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993); Action S.A., 951 F.2d at 508.

("plaintiffs" or "Chubb") brought this action against numerous defendants, including Horowitz, alleging that they participated in the submission of fraudulent property insurance claims to Chubb in violation of the Racketeer and Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq. (2000) and state law. (See Second Amended Complaint, dated March 24, 1995 ("SAC").) Plaintiffs allege that the defendants defrauded Chubb by making material, false representations and that Chubb relied on those misrepresentations, thereby suffering damage. (Id.)

Horowitz was a public adjuster employed by defendant Interstate Adjusters, Inc. ("Interstate"). (Id. ¶ 42.)[2] According to the Second Amended Complaint, Horowitz participated in the scheme by submitting two false statements to Chubb on behalf of his clients.

The first claim related to a company called Techknits, which rented a portion of a manufacturing facility at 10 Grand Avenue in Brooklyn, New York. A fire in that building on March 5, 1991 caused slight fire damage on a small area of a floor occupied by another tenant. (SAC ¶¶ 91-92.) Techknits rented a portion of that building for production facilities, but stored its stock and inventory elsewhere. (Id. ¶ 105.) Although Techknits sustained little if any smoke and water damage, Horowitz participated with other defendants – including Techknits President Simon Taub, Salvor Victor Boruta, Chubb adjustor Nicholas Addesa and Interstate president Robert Greenberg – in submitting an inflated claim to Chubb for $1,249,100 in inventory losses and $39,050 in equipment losses. (Id. ¶¶ 98, 101.) Chubb issued drafts to Techknits totaling $1,239,100 in payment of its claim. (Affidavit of Beverly Ascolese, sworn to Aug. 30, 2005

---

[2] Public adjusters are hired by insureds to "act[] or aid[] in any manner on behalf of an insured in negotiating for, or effecting, the settlement of a claim or claims for loss or damage to property of the insured." N.Y. Ins. Law § 2101(g)(2).

("Ascolese Aff."), ¶ 6.) Horowitz pleaded guilty to two counts of mail fraud and one count of tax evasion for his role in inflating this loss. (SAC ¶¶ 25, 98.) At his allocution, Horowitz admitted that he twice received cash payments from Techknits, in excess of the fees his company would charge for legitimate claims, and that the cash was used to compensate him and his co-conspirators, including the Chubb adjuster, for orchestrating the fraud. (See Memorandum in Support of Plaintiffs' Calculation of Damages Against Defaulting Defendant Stephen Horowitz, dated Sept. 6, 2005, Ex. B.)

The second claim was a homeowner property claim on behalf of Sheldon and Karen Zablowitz for alleged water damage to their basement in September 1991. (SAC ¶ 305.) According to the Second Amended Complaint, Horowitz assisted in fabricating the Zablowitz claim and conspired with others – including defendants Sheldon and Karen Zablowitz and Chubb adjuster Harold Casey – to "ma[k]e false and fraudulent representations to Chubb with respect to this claim, including, but not limited to, the cause of the damage, the existence and extent of the damage, the repair work needed and the repair work actually performed." (Id. ¶¶ 306, 307.) With Horowitz's assistance, Sheldon and Karen Zablowitz submitted a claim for $7,711.49, which Chubb paid in full. (Ascolese Aff. ¶¶ 8, 9, Exs. E, F.)

## DISCUSSION

### A. Liability for Common Law Fraud

To prevail on a fraud claim under New York law, a plaintiff must establish by clear and convincing evidence that (1) the defendant made a material misrepresentation; (2) the defendant knew of its falsity; (3) the defendant possessed an intent to defraud; (4) the plaintiff reasonably relied on the misrepresentation; and (5) the plaintiff suffered damage as a result of

the misrepresentation. Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000); New York Univ. v. Continental Ins. Co., 662 N.E.2d 763, 769 (N.Y. 1995) (citing Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 151 N.E.2d 833, 835 (N.Y. 1958)). As explained, because Horowitz has defaulted, the court must accept as true all allegations in the Second Amended Complaint for purposes of liability. Here, the Second Amended Complaint alleges sufficient facts to state a claim against Horowitz for common law fraud with respect to both the Techknits and Zablowitz claims.[3]

B. Liability and Treble Damages Under RICO

RICO provides a civil cause of action and treble damages to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962(c) in turn provides:

> It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

As Judge Amon explained in her Memorandum and Order in this case dated September 28, 2001, a violation of this provision requires proof of "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" (Mem. and Order, dated Sept. 28, 2001, at 5 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).) Because civil RICO allows for the

---

[3] Indeed, Horowitz's plea of guilty to a charge of mail fraud on the Techknits claim establishes conclusively that Horowitz made a false material misrepresentation to Chubb with the intent to defraud. The crime of mail fraud has three elements: (1) the use of the mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme. United States v. Kinney, 211 F.3d 13, 17 (2d Cir. 2000). To prove the second element, the government must show that the defendant made misrepresentations that were false and material, and that the defendant acted with fraudulent intent. Id.

recovery of treble damages, it is "an unusually potent weapon – the litigation equivalent of a thermonuclear device...." Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998). The court must therefore review plaintiffs' civil RICO allegations with particular scrutiny. See Leung v. Law, 387 F. Supp. 2d 105, 112 (E.D.N.Y. 2005) ("the courts of this Circuit have frequently noted that alleged RICO violations 'must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations.'") (quoting Mathon v. Marine Midland Bank, N.A., 875 F. Supp. 986, 1001 (E.D.N.Y. 1995)); West 79th Street Corp. v. Congregation Kahl Minchas Chinuch, No. 03 Civ. 8606RWS, 2004 WL 2187069, at *5 (S.D.N.Y. Sept. 29, 2004) ("courts must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing.").

The RICO statute defines "racketeering activity" in terms of activity that violates other laws, including mail fraud, in violation of 18 U.S.C. § 1341. See 18 U.S.C. § 1961(1). A "pattern" consists of "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The Supreme Court has noted, however, that § 1961(5) does not define a pattern of racketeering activity so much as it "state[s] a minimum necessary condition for the existence of such a pattern." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). Thus, "while two acts are necessary, they may not be sufficient." Sedima, 473 U.S. at 496 n. 14. Proof of the requisite pattern requires an additional showing "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc., 492 U.S. at 239.

Relatedness is established by "proof of 'criminal acts that have the same or

similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir. 1994) (quoting H.J. Inc., 492 U.S. at 240). This proof may be adduced in numerous ways, including "temporal proximity, or common goals, or similarity of methods, or repetitions. The degree to which these factors establish a pattern may depend on the degree of proximity, or any similarities in goals or methodology or the number of repetitions." United States v. Indelicato, 865 F.2d 1370, 1382 (2d Cir. 1989).

The continuity element may be satisfied in either of two ways, referred to as "closed-ended" and "open-ended" continuity. Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). Closed-ended continuity requires proof of "continued criminal activity, by a particular defendant . . . extending over a substantial period of time," usually more than two years. Id. Open-ended continuity may be established by a showing of a shorter period of criminal conduct coupled with a threat of future criminal activity. See id.; GICC Capital Corp. v. Technology Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995). In making a determination regarding the threat of future criminal activity, the Second Circuit has instructed lower courts to use a "flexible standard":

> [I]n cases where the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short. In contrast, in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally have found no threat of continuing criminal activity arising from conduct that extended over even longer periods [than a few weeks or months].

United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995).

The term "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The enterprise must be distinct from the pattern of racketeering activity. As the Supreme Court explained in United States v. Turkette, 452 U.S. 576, 583 (1981):

> The enterprise is an entity, . . . a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.

Section 1962(c) also requires that the "person" subject to RICO liability be distinct from the enterprise. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). However, this element is satisfied even "when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner" because the employee "is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." Id. at 166.

Finally, to be liable under the RICO statute, the alleged racketeer must "participate, directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). To do this, "one must participate in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993). An enterprise is operated by those who have "some part in directing" the enterprise's affairs or "who exert control over it as, for example, by bribery." Id. at 179, 184.

I find that the allegations in plaintiffs' complaint, which this court must accept as true, establish Horowitz's violation of the RICO statute. Plaintiffs' Fourth Claim for Relief identifies Interstate as the RICO enterprise and alleges that Horowitz conducted the affairs of Interstate through a pattern of racketeering activity. (See SAC ¶¶ 359-63.) According to the Second Amended Complaint, Interstate submitted at least twenty-nine separate fraudulent insurance claims to Chubb (id. ¶ 22), and Horowitz participated in the management of Interstate's affairs and its submission of fraudulent claims, personally committing at least two acts of mail or wire fraud pertaining to two separate fraudulent insurance claims. (Id. ¶¶ 25, 108, 307.) Although Horowitz's predicate acts[4] took place over a short period of time, they satisfy the pattern and open-ended continuity elements because, viewed in the context of Interstate's numerous other submissions of fraudulent claims, they posed a threat of repetition and there was no natural ending point to the scheme. See Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 20 (1st Cir. 2000) (explaining that a scheme that could potentially go on indefinitely absent detection can satisfy open-ended continuity); see also Vicom, Inc. v. Harbridge Merchant Servs., 20 F.3d 771, 782 (7th Cir. 1994) ("[S]chemes which have a clear and terminable goal have a natural ending point . . . [and] therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity."). In addition, there can be no question that the predicate acts of fraud are related, since they are alleged to have had the same victim, Chubb, and the same or similar purpose, i.e., defrauding Chubb. In other words, these were not

---

[4] The Second Amended Complaint alleges that, in furtherance of his fraudulent scheme with respect to the Zablowitz claim, Horowitz "mailed and caused to be mailed" various items "and made and caused to be made . . . interstate wire communications. . . ." (SAC ¶ 307.) Those acts of mail and wire fraud constitute predicate acts for RICO purposes. See Cofacredit, 187 F.2d at 242.

isolated events; they were part of Interstate's regular way of conducting business. See H.J. Inc., 492 U.S. at 243. I therefore find that the Second Amended Complaint alleges sufficient facts to state a civil RICO claim against Horowitz.

C. Damages for Civil RICO and Common Law Fraud

As Judge Amon has previously held in this case, the appropriate measure of damages under plaintiffs' RICO and common law fraud claims "is a sum equal to the settlements paid on the fraudulent claims submitted by the defendants." (Mem. and Order, dated Sept. 28, 2001, at 23 (citing Aetna Casualty Surety Co. v. P & B Autobody, 43 F.3d 1546, 1568-69 (1st Cir. 1994).) Since plaintiffs are only entitled to collect once on each fraudulent claim, each defendant who participated in the submission of a fraudulent claim is jointly and severally liable for the amount of that claim with the other defendants who participated in submitting it. (Id. at 24 (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Arcturus Builders, Inc., 552 N.Y.S.2d 287, 288 (1st Dep't 1990).) Here, Horowitz is alleged to have participated in the submission of fraudulent claims on behalf of Techknits, with a total settlement amount of $1,239,100. (See Ascolese Aff., Ex. D.) Although Chubb paid $7,711.49 on the Zablowitz claim, it is not seeking damages from Horowitz on that claim. (See Veisz Ltr. at 3.) Trebling $1,239,100 leads to a total of $3,717,300. (Id., Ex. A.)

D. PreJudgment Interest

Chubb requests prejudgment interest on the amounts awarded against Horowitz. (Memorandum in Support of Plaintiff's Calculation of Damages Against Defaulting Defendant Stephen Horowitz ("Pls.' Mem.") at 12.) It points out that "'[u]nder New York law, awarding pre-judgment interest on damages awarded for fraud is mandatory.'" (Id. (quoting In re Crazy

Eddie Secs. Litig., 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996).) The New York statute states: "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property . . . ." N.Y. C.P.L.R. § 5001(a). The statute further states that "[i]nterest shall be at the rate of nine percent per annum" (N.Y. C.P.L.R. § 5004) and directs that interest on the cause of action be computed from the date of accrual. Baker v. Dorfman, 239 F.3d 415, 425 (2d Cir. 2000); N.Y. C.P.L.R. § 5001(b); see also St. Paul Fire & Marine Ins. Co. v. Fox Insulation Co., No. 96 CV 0502E(F), 1999 WL 782333, at *1 (W.D.N.Y. Sept. 30, 1999) ("[T]he prejudgment interest accrues from the date the insurance company makes payment") (citing American Home Assurance Co. v. Morris Industrial Builders, Inc., 597 N.Y.S.2d 27, 28 (1st Dep't 1993)). The purpose of prejudgment interest is to compensate plaintiffs for the use of funds that were wrongfully diverted by the defendant. Lewis v. S.L. & E., Inc., 831 F.2d 37, 40 (2d Cir. 1987).

However, the RICO statute is silent on the issue of prejudgment interest, and any such award with respect to the RICO claim is therefore discretionary. See Abou-Khadra v. Mahshie, 4 F.3d 1071, 1084 (2d. Cir. 1993); Panix Productions, Ltd v. Lewis, No. 01 Civ. 2709, 2003 WL 21659370, at *3 (S.D.N.Y. July 15, 2003). In Wickham Contracting Co. v. Local Union No. 3, 955 F.2d 831, 833 (2d Cir. 1992), the Second Circuit identified the factors courts must consider in determining whether or not to award prejudgment interest on a RICO damages award. It explained that "the award should be a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other

general principles as are deemed relevant by the court." See also Panix Productions, 2003 WL 21659370, at *3 ("Prejudgment interest on RICO damages may be awarded under circumstances in which the treble damages do not adequately compensate the plaintiff or the defendant acted unreasonably and unfairly to delay or obstruct the course of litigation.") (citing Bingham v. Zolt, 810 F. Supp. 100, 102 (S.D.N.Y. 1993); Mitland Raleigh-Durham v. Myers, 840 F. Supp. 235, 242 (S.D.N.Y. 1993)). Analyzing these factors, I find that the treble damages more than make Chubb whole, and that prejudgment interest on the RICO claim would be an undue windfall.

In sum, I recommend that Chubb be awarded prejudgment interest at the rate of nine percent per annum on their common law fraud claim, but not on their RICO claim. See Panix Productions, 2003 WL 21659370, at *1-3 (awarding prejudgment interest on state law fraud and breach of fiduciary duty claims, but denying request for prejudgment interest on RICO claims). Interest should be computed from the date the Techknits claim was paid[5] until the date of entry of judgment. (See Veisz Ltr., Ex. A.)

E. Set-Offs for Settlements With Other Defendants

As Judge Amon has explained, to the extent that some defendants have entered into settlement agreements with plaintiffs, the remaining defendants are entitled to set-offs based on those agreements. (Mem. and Order, dated Sept. 28, 2001, at 24.) Chubb has submitted Tables showing the amounts of the settlement and restitution payments attributable to each

---

[5] Chubb requests that interest be calculated on the Techknits claim from June 25, 1991, the date of the last of four payments Chubb made. (Affidavit of Howard S. Veisz, Esq., sworn to Sept. 6, 2005, ¶ 5a, Table 1.) The total amount paid on that claim was $1,239,100. (Id., Table 1.) Chubb paid the Zablowitz claim of $7,711.49 on October 11, 1991. (Id., Table 2.) As explained *infra*, because Chubb has received settlement payments attributable to the Zablowitz claim, it has removed that claim from its final computation. (See Veisz Ltr. at 3.) Chubb's prejudgment interest calculations clearly assume that interest will be awarded only on the principal amount of the Techknits claim, and not on the RICO damages.

claim, and their impact on the overall judgment calculation. (See Veisz Aff., Tables 1 and 2; Veisz Ltr., Ex. A.) As reflected in the Tables, Horowitz was credited for settlement and restitution payments on a *pro rata* basis. For example, former Chubb employee Nicholas Addesa was liable for a total of $1,764,524.84 in fraudulent claims, 70.22 percent of which is attributable to the Techknits claim. (See Veisz Ltr., Ex. A.) Thus, for each restitution payment Chubb received from Addesa, it applied 70.22 percent of that amount to reduce the principal amount owed by other defendants, including Horowitz, on the Techknits claim. (Id.) When Horowitz made restitution payments they were deducted from the damages owed for the Techknits claim, for which Horowitz pleaded guilty, and the principal amount owed was reduced for purposes of calculating prejudgment interest. (Veisz Ltr. at 2.) Because Chubb has received settlement payments from other parties that effectively satisfy the total amount owed on the Zablowitz claim, it has removed that claim from its damages computation. (Id. at 3.) Chubb has submitted copies of settlement and restitution documents, which this court has reviewed *in camera*, for the purpose of verifying the credits allocated to Horowitz on the Techknits claim. Having reviewed the documents thoroughly, I am satisfied that Chubb's allocations and computations are accurate.[6]

After taking restitution and settlement payments into account, Horowitz's total liability is $4,678,641.55 ($3,717,300.00 in treble damages plus $1,386,083.20 in accrued interest through March 3, 2006 minus $424,741.65 in recoveries). I therefore respectfully recommend that judgment be entered against Horowitz in that amount, plus $200.80 in interest

---

[6] Chubb's counsel states that Chubb has entered into a settlement agreement with another defendant involved in the Techknits claim, but has yet to receive any payment from that defendant. (See Veisz Ltr. at 2.) Obviously, if Chubb receives any settlement payments from that party, it will reduce Horowitz's obligation proportionately.

per day from March 3, 2006 to the date of the entry of judgment.

## CONCLUSION

For the reasons stated above, I respectfully recommend that judgment be entered against Horowitz in the amount of $4,678,641.55, plus per diem interest of $200.80 from March 3, 2006 to the date of the entry of judgment. Objections to this report and recommendation must be filed within ten (10) business days, with courtesy copies to Judge Amon and the undersigned, in order to preserve appellate review. See 28 U.S.C. § 636(b)(1).

Respectfully submitted,

ROBERT M. LEVY
United States Magistrate Judge

DATED: Brooklyn, New York
March 24, 2006